IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CV-751-FL

| | |
|---|---|
| JASPER SMITH, III, ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-15, DE-21] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Jasper Smith, III ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for supplemental security income ("SSI"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be allowed, and the final decision of the Commissioner be affirmed.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on March 11, 2011, alleging disability beginning December 31, 2006. (R. 10, 163-69). The claim was denied initially and upon reconsideration. (R. 62-88). A hearing before the Administrative Law Judge ("ALJ") was held on June 4, 2013, at which Claimant was represented by counsel and a vocational expert ("VE")

appeared and testified. (R. 20-49). At the hearing, Claimant amended his alleged onset date to February 19, 2011. (R. 22). On July 2, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-19). Claimant requested a review of the ALJ's decision, and the Appeals Council denied Claimant's request for review on September 23, 2014. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges that the ALJ's credibility and residual functional capacity ("RFC") determinations are not supported by substantial evidence. Pl.'s Mem. [DE-16] at 6-9.

3

## IV. FACTUAL HISTORY

### A.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since his alleged onset date. (R. 12). Next, the ALJ determined that Claimant had the severe impairments of osteoarthritis of the left hip, a history of total hip replacement in August 2011, hypertension, and blindness in the left eye, and the non-severe impairments of a non-displaced fracture of the left patella, pes planus, bunion, alcohol abuse, and dysthymia. (R. 12-13). Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitation in his activities of daily living and concentration, persistence and pace, no limitation in social functioning, and no episodes of decompensation of extended duration. (R. 13-14). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following restrictions: never climb ladders, ropes, or scaffolds; occasionally stoop and climb ramps and stairs; frequently balance, crouch, kneel, and crawl; frequently push/pull foot controls with his left lower extremity; avoid concentrated exposure

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 416.967(b).

4

to unprotected heights; performance limited to simple, routine, repetitive tasks; and limited to jobs requiring only occasional peripheral vision due to left-eye blindness. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 15-17). At step four, the ALJ concluded that Claimant had no past relevant work. (R. 18). However, at step five, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 18-19).

**B.     Claimant's Testimony at the Administrative Hearing**

Claimant was 44 years old, single, and living with his sister, brother-in-law, and their 17-year-old daughter at the time of the administrative hearing. (R. 24-25). Both the sister and brother-in-law were employed, and Claimant was unemployed and receiving food stamps. (R. 25-26). Claimant dropped out of school after completing the tenth grade (R. 26), and he last worked in 2006 for two months but quit after being moved into a position stacking boxes of cheese on a cart, which he could not do. (R. 28-29).

Claimant testified that he cannot work because he has arthritis on his entire left side that causes numbness, he needs surgery on his left foot, has broken most of the bones in his knee, and has a bullet in his left groin from when he was shot in 1993. (R. 29). He experiences sharp, constant pain (R. 44-45) for which he takes Oxycodone and Naproxen, and he also takes two blood pressure medications. (R. 29-30). Claimant had not taken his pain medication before the hearing because he has to take it with food. (R. 30). Claimant's pain medications also cause drowsiness and when he takes them he sleeps for an hour or two. (R. 43). Each of Claimant's medications cost $3.00 per co-payment. (R. 31). His sister or other family members pay for his medications and medical appointments when they can, and he panhandles when his family cannot afford to give him money.

5

(R. 26-27, 30). Claimant fractured his left knee in March 2012. (R. 32). No surgery was required, but the injury continued to bother him. (R. 33). Claimant rated his left-hip pain, on a scale of one to ten with one being no pain and ten being excruciating pain, as a seven with medication and an eight or nine without. (R. 33). He rated his left-knee pain as an eight with medication and a nine without. (R. 34). Claimant uses a walker or crutch at home, but brought neither to the hearing. *Id.* He was not using his crutch due to a rash under his arm. *Id.* Claimant did not bring his walker because he had to get a ride to the hearing from his attorney and because he forgot to bring it. (R. 35). Claimant insisted that despite not having an assistive device at the hearing, he did need to use one at all times. *Id.*

Claimant estimated he can walk 40 to 50 feet and stand for five minutes before experiencing numbness in his left side and pain in his feet. (R. 39-40). When he experiences numbness and muscle spasms from sitting or lying down for too long, he gets up and moves around for relief, which he did at the ALJ's suggestion during the hearing. (R. 40). Claimant experiences cramping in his legs and toes after sitting for five to seven minutes. (R. 41). Claimant sees a primary care physician every two months. (R. 41-42). No further surgery was recommended for Claimant's hip and the doctor indicated he would continue to have numbness. (R. 40). Claimant's doctor treats his numbness with pills, but has not increased his dosage of Oxycodone or Naproxen. (R. 41). Claimant can lift no more than five to seven pounds without pain in his hip and legs. (R. 42). Claimant lost vision in his left eye in 1990 or 1991, and the vision in his right eye is blurry and sometimes causes headaches. (R.31-32). Claimant was not wearing corrective lenses at the hearing because he had broken his eyeglasses, but planned to make an appointment to obtain a new pair. (R. 32).

On a normal day, Claimant bathes and then leaves his sister's house, so as not to "wear out

his welcome" so to speak, and limps or hops around the neighborhood talking to different people. (R. 35-36). His neighbors let him rest at their homes when he gets drowsy after taking his pain medications. (R. 43-44). He uses his food stamp card to buy food at the Dollar Store and stays out until around 8:30 or 9:00 p.m. so as not to interfere with his sister's family life. (R. 36-37). As for doing chores, Claimant estimated he might be able to stand for four or five minutes to wash a few dishes and that, due to his need to take breaks, it might take an hour and a half to finish the chore. (R. 42-43). He cannot perform outside work such as mowing the grass because it requires too much walking and pushing the lawnmower is painful. (R. 44).

C.     **Vocational Expert's Testimony at the Administrative Hearing**

Dr. Ann Neulicht, Ph.D. testified as a VE at the administrative hearing. (R. 45-48). After finding that Claimant had no past relevant work at substantial gainful activity levels, the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant with the RFC to perform light exertional work with the limitations of never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs and stoop; frequently balance, crouch, kneel, crawl, and push or pull foot controls with the left leg; avoid concentrated exposure to unprotected heights; and perform jobs requiring only occasional peripheral vision and simple, routine, repetitive tasks. (R. 45-46). The VE indicated the hypothetical individual could perform the jobs of mail clerk, Dictionary of Occupational Titles ("DOT") code 209.687-026, light in exertion, and unskilled with an SVP of 2; office cleaner, DOT code 323.687-014, light in exertion, and unskilled with an SVP of 2; and photocopying machine operator, DOT code 207.685-014, light in exertion, and unskilled with an SVP of 2. (R. 46-47). Next the ALJ asked the VE to assume an individual able to perform sedentary exertional work with the same limitations listed in the first

hypothetical. (R. 47). The VE indicated the hypothetical individual could perform the jobs of surveillance system monitor, DOT code 379.367-010, sedentary in exertion, and unskilled with an SVP of 2; order clerk, food and beverage, DOT code 209.567-014, sedentary in exertion, and unskilled with an SVP of 2; and food checker, DOT code 211.482-014, sedentary in exertion, and unskilled with an SVP of 3. (R. 47-48). The ALJ also asked how many unexcused absences would typically be tolerated on a monthly basis, and the VE indicated none in the first three months of probationary period and thereafter one day per month may be earned, but anything in excess would result in termination. (R. 48). The ALJ affirmed that her testimony was consistent with the DOT, and Claimant's attorney did not ask any questions. *Id.*

## V. DISCUSSION

### A. The ALJ's Credibility and RFC Determinations

Claimant contends that the ALJ improperly discounted his subjective complaints of pain and erred in determining he could perform light work. Pl.'s Mem. [DE-16] at 6-9. The Commissioner contends that the ALJ's determinations are supported by substantial evidence. Def.'s Mem. [DE-22] at 9-15.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from

8

alleged symptoms. 20 C.F.R. § 416.945(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 416.920a(c)(1). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 416.929(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that

9

could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

Here, the ALJ determined that Claimant had the RFC to perform a limited range of light work. (R. 14). The ALJ considered several factors in determining Claimant's RFC, including Claimant's medical history, the medical opinion evidence, and Claimant's testimony, which the ALJ found to be less than credible. (R. 14-18). Claimant contends that the ALJ erred in finding his testimony regarding the limiting effects of his pain not fully credible, because his testimony is

10

consistent with the medical evidence. Pl.'s Mem. [DE-16] at 9. The undersigned disagrees.

Claimant testified that he cannot work due to pain and numbness on his left side and pain in his left knee as a result of breaking several bones, and he cannot always afford the $3.00 co-payments for his medications. *Id*; (R. 29, 26-27, 30, 32-35, 39-41, 44-45). In determining Claimant's testimony was less than fully credible, the ALJ made the following findings: " I do not believe [Claimant's] allegation that his sister and brother-in-law both work, but they are unable to pay for his prescriptions which reportedly only cost $3.00 each;"[2] Claimant's allegation of left leg numbness is not supported by objective medical evidence of record; Claimant's allegations that he required the use of a crutch or walker every day at home is undermined by the fact that he used neither at the hearing and although he explained he was not using his crutch due to having a rash under his arm, he had no explanation for why he was not using his walker; Claimant did not require surgery for his left knee fracture and no further surgery was recommended for Claimant's hip after a successful hip replacement in August 2011; in March 2013, a treatment provider noted Claimant walked with a limp, which was not noted at prior office visits in October 2012, December 2012, or February 2013, and Claimant routinely had normal range of motion, normal strength, no tenderness, and no swelling; Claimant's testimony regarding drinking alcohol was contradicted by treatment notes indicating he was continuing to drink against his treatment provider's recommendation; and Claimant's testimony that he could sit for only five to seven minutes was undermined by the fact that he sat much longer than that at the administrative hearing without any apparent difficulty (the ALJ also noted Claimant had not taken any pain medication prior to the hearing). (R. 15-17).

---

[2] Despite Claimant's allegations that he was at times unable to afford his $3.00 co-payments for medications, he reported using marijuana in November 2012 (R. 333) and again in May 2013 (R. 347).

11

The ALJ fully explained her reasons for discounting Claimant's credibility and cited substantial evidence in the record. *See Mascio*, 780 F.3d at 639 (explaining the ALJ "should have compared [claimant's] alleged functional limitations from pain to the other evidence in the record" when evaluating credibility); *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations . . . ."). Claimant does not take issue with any of the ALJ's reasons presented, but rather disagrees with the ALJ's conclusion drawn from the record, essentially asking the court to reconsider the testimonial and other record evidence and give controlling weight to Claimant's testimony regarding the extent of his limitations. Pl.'s Mem. [DE-16] at 9. It is not within the province of the court to re-weigh the evidence where the ALJ has considered and analyzed all the relevant evidence and the ALJ's decision is supported by substantial evidence, as is the case here. *Mastro*, 270 F.3d at 176 (citing *Craig*, 76 F.3d at 589). Accordingly, the ALJ did not err in the credibility determination.

Claimant also contends the ALJ's RFC determination that he can perform light work, which requires a good deal of walking or standing, and the ALJ's finding that Claimant can frequently balance, crouch, kneel, and crawl are inconsistent with Claimant's continued hip and knee pain. Pl.'s Mem. [DE-16] at 6-7. Claimant relies on his testimony and complaints of continued pain to his treatment provider. *Id.* However, as explained above, the ALJ found Claimant's testimony not fully credible with respect to his allegations of pain and the limiting effects thereof, and this finding is supported by substantial evidence. In addition to considering Claimant's testimony when determining the RFC, the ALJ also considered Claimant's medical records and the opinion evidence,

12

including a prior unfavorable SSA decision dated February 18, 2011.[3] (R. 16-18). Claimant has pointed to no evidence the ALJ failed to consider, and there is substantial evidence to support the ALJ's RFC determination despite Claimant's complaints of continued pain.

Claimant received a hip replacement on August 31, 2011 and on September 15, 2011 was reported to be medically doing well, given a refill on his pain medication, and advised to continue weight-bearing as tolerated and physical therapy at home. (R. 261). There is no evidence that Claimant returned to his orthopedist related to his allegations of continued hip pain. Claimant followed up with his primary care provider on September 29, 2011, reported pain and swelling in his lower extremity, requested a prescription for a wheelchair, which was given, and was advised to continue physical therapy. (R. 285). There is no evidence in the record that Claimant ever utilized a wheelchair. He saw his primary care provider again on November 9, 2011, reported continued hip pain, and was noted to be using a walker. (R. 329-30). Claimant saw an orthopedist in March 2012 regarding his knee fracture (R. 341), but was advised to continue conservative treatment and by May 2012 was reported as doing reasonably well with pain "definitely getting less" and "no new problems to report" (R. 339). There is no evidence that Claimant returned to his orthopedist related to his allegations of continued knee pain. Claimant did see his primary care provider in May 2012 regarding a rash, and was noted to be wearing a knee brace after fracturing his knee, but there is no mention of a walker or hip pain. (R. 325-27).

In August, October, and December 2012 and February 2013, Claimant reported hip and knee

---

[3] In denying the prior claim, the ALJ determined Claimant had the RFC to do less than a full range of sedentary work (R. 55), and the final decision was affirmed by this court, *Smith v. Colvin*, No. 5:12-CV-311-FL, 2014 WL 25573 (E.D.N.C. Jan. 2, 2014) (unpublished). However, that RFC determination was made prior to Claimant's successful hip replacement surgery in August 2011. (R. 216).

13

pain to his primary care provider, but the treatment notes indicate he was ambulating normally with negative examination findings and there is no mention of Claimant using an assistive device. (R. 313-24). Claimant continued to be treated conservatively with medications. *Id.* Claimant correctly points out documentation in the record that he was twice noted to walk with a limp in March 2013 and May 2013 (R. 345, 350); however, these treatment notes also indicate Claimant ambulated within normal limits (R. 344, 349) and mention no assistive device despite Claimant's insistence at the administrative hearing that he had to use his walker or crutch at all times (R. 35). Furthermore, as the ALJ noted, Claimant testified that he spent his days out of the house visiting with various people in his neighborhood (R. 16), which is further evidence that any limp did not impair his ability to ambulate effectively. Where the has ALJ has thoroughly analyzed the testimony and available evidence and reasonably concluded that Claimant retained the RFC to perform a limited range of light work, as is the case here, the court may not re-weigh conflicting evidence or substitute its judgment for that of the ALJ. *See Guiton v. Colvin*, 546 F. App'x 137, 141 (4th Cir. 2013) (unpublished) (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). Accordingly, the ALJ appropriately evaluated Claimant's RFC, and there is substantial evidence in the record to support the ALJ's RFC determination.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-15] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-21] be ALLOWED, and the final decision of the Commissioner be upheld.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **January 29, 2016** to file

written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the *15* day of January 2016.

Robert B. Jones, Jr.
United States Magistrate Judge